Leon **ROSENFIELD,** as Administrator d.b.n.c.t.a. of Estate of George D. Beaston, Deceased, Plaintiff,

v.

**UNITED STATES,** Defendant.

Civ. A. No. 18750.

United States District Court
E. D. Pennsylvania.

Dec. 3, 1957.

Herbert M. Linsenberg, Meltzer & Gleeson, Philadelphia, Pa., for plaintiff.

Harold K. Wood, U. S. Atty., Philadelphia, Pa., for defendant.

GRIM, District Judge.

The government has assessed additional estate tax against the plaintiff, which has been paid. In this action plaintiff is attempting to recover the amount of the additional estate tax assessed against it.

The decedent died on July 25, 1950. During the year after death some securities owned by the estate increased in value. Others decreased in value and others did not change. The aggregate amount of the increases during that period exceeded the amount of the decreases by some $40,000.

In determining values for estate tax purposes the Internal Revenue Code grants estates an option to have their assets valued as of the date one year after death if they so elect.[1] This is termed the optional valuation date. The option can be exercised only if certain conditions are met: if the tax return is filed on time (within 15 months after death) and if the estate elects on the return to have the assets valued as of the optional valuation date. Once properly made, the election cannot be revoked after the expiration of the time for filing the return. When the election is made, all the assets of the estate must be valued as of the optional valuation date. Estates are not given the option to pick and choose one date or the other (date of death or one year after death) for each asset individually.[2]

In this case the estate tax return was filed on August 27, 1951, well within 15 months after death. The return form included this question:

"Does the executor elect to have the gross estate of this decedent valued in accordance with values as of a date or dates[3] subsequent to the decedent's death as authorized by section 811(j) of the Internal Revenue Code? (Answer 'Yes' or 'No')"

The question was answered yes on the return. Since the aggregate value of the assets of the estate increased in value during the year after death, from an estate tax point of view the proper answer to the question should have been no instead of yes. It is because of the mistake in answering the question yes in-

---

1. " * * * The purpose of [this] was to mitigate the hardship consequent upon shrinkage in the value of estates during the year following death. Congress enacted it in the light of the fact that, due to such shrinkages, many estates were almost obliterated by the necessity of paying a tax on the value of the assets at the date of decedent's death." Maass v. Higgins, 1941, 312 U.S. 443, 446, 61 S.Ct. 631, 632, 85 L.Ed. 940.

2. The Revenue Code, 26 U.S.C.A. (I.R.C. 1939) § 811(j) provides: "(j) Optional valuation. If the executor so elects upon his return (if filed within the time prescribed by law or prescribed by the Commissioner in pursuance of law), the value of the gross estate shall be determined by valuing all the property included there-in on the date of decedent's death as of the date one year after the decedent's death * * *" Treasury Regulation 105, Section 81.11(1) provides: "The election of the executor to have the gross estate valued in accordance with the method authorized by section 811(j), in order to be effective, must be made on the return filed within 15 months from the decedent's death or within the period of any extension of time granted * * * In no case may the election be exercised, or a previous election changed, after the expiration of the time for the filing of the return."

3. When the optional date is selected, all assets disposed of within a year after death must be valued as of the date of disposal.

stead of no that the additional estate tax was assessed against plaintiff estate and paid. This suit has been brought to relieve the estate from the consequences of the mistake and to recover the additional estate tax which it has paid.

The executor [4] of the estate relied completely upon the attorney for the estate to prepare the return, including the answer to the question as to the optional valuation date, and to compute the tax. Relying upon the attorney's implied advice, he signed the return as the attorney prepared it and submitted it to him.

The attorney has testified in the present case. His testimony discloses that yes was the answer intended to be given to the quoted question. It shows that he mistakenly believed that by electing the optional valuation date the estate would be permitted to pick and choose the advantageous date for each individual asset. Accordingly, under the column headed "Value under option" on the return he entered the valuation at the date of death for each asset which had increased in value within a year after death, and the year after death valuation for each asset whose value had decreased or remained unchanged during that period. He then proceeded to make a computation of the tax, treating the total of this hodgepodge of values as the correct total optional valuation. These actions are consistent with and clearly confirm the attorney's testimony of the estate's intention to elect the optional valuation date, its misunderstanding of the method of computing the tax based upon an optional valuation, and hence its misunderstanding of the tax consequences of exercising the election.

It is clear that if the estate had made no election, date of death values would have had to be used. Plaintiff contends that since it applied the election to only a portion of the assets of the estate (the favorable portion), its action, being contrary to the statute and the regulations, was not a true election and that there-fore the date of death values must be used. Plaintiff's contention restated is that since the regulations (Sec. 81.11 of Regulation 105) provide that "The election applies to all the property in the gross estate on the date of decedent's death. It cannot be applied to a portion of such property," an attempted application of the election to only a portion of the property in the estate in violation of the regulations does not constitute a valid or true election and that consequently the case must be treated as though no election had been made. With this contention I cannot agree.

The fact that the estate misunderstood the effect of the election on its tax liability and prepared the return in accordance with this misunderstanding does not mean that it did not make an election. In the course of settling decedents' estates many decisions must be made. The fact that a decision later turns out to have been unwise does not mean that no real decision was made. And it is still a true decision even though it may have been based upon an improper method of computing tax liability or upon a mistake of law or fact and leads to an increase in tax liability. In the present case the decision of the estate upon the advice of counsel to elect the optional valuation was an unwise decision, but certainly it was a real decision and the election of the optional valuation date was a real election.

Conceivably there may be cases where an estate tax return has been prepared in such a way as to show a mistake of a type from which the estate could be relieved by court action. For instance, in the present case where the question was answered yes, if all the information as to values of securities had been entered on the return on the basis of values at the time of death and the tax had been computed clearly on date of death values, then the yes answer to the question would have been inconsistent with the rest of the return and inconsistent with the theory on which the

4. The executor has died and has been succeeded by an administrator d.b.n.c.t.a.

tax was computed. In such a case the tax return would show an obvious ambiguity as to whether or not the election had been exercised and it might be proper to receive oral testimony to show what answer really was intended and that the yes answer was a mistake such as a slip of the pen or a stenographer's error. In such a case despite the yes answer the estate might be relieved from liability for tax on an unintended year after death valuation basis. This would be the result because neither the statute nor the regulations necessarily require the use of a specific question as to the optional valuation on the return. They merely state that the election must be made on the return without specifying precisely what act shall constitute an election.[5] A tax return like any other document should be read as a whole to determine its true meaning, and when it appears from the return that the yes answer may not have been intended, the estate should be able to resolve an ambiguity and to show that it actually intended to say.[6]

■ In the present case, however, there is no ambiguity and no uncertainty on the return. The answer to the election question is yes. The information is given in conformity with a yes answer and the tax is computed on the basis of a yes answer, albeit on the basis of the wrong results of a yes answer. The testimony also shows that the estate intended to answer yes to the question.

■ Plaintiff contends also that even though the estate elected the optional valuation date it should now be permitted to revoke the election because it was made by mistake. He cites Meyer's Estate v. Commissioner, 5 Cir., 1952, 200 F.2d 592 and Richardson v..Commissioner, 2 Cir., 1942, 126 F.2d 562, 140 A.L.R. 705 as cases in which taxpayers have been permitted to revoke elections because they were made under mistake of fact or of law. There are other tax cases, however, which deny the right to revoke an election after the time for filing of a return has passed. See Pacific National Co. v. Welch, 1938, 304 U.S. 191, 58 S.Ct. 857, 82 L.Ed. 1282; Rose v. Grant, 5 Cir., 1930, 39 F.2d 340. Rose v. Grant has been followed in this circuit in Lamb v. Smith, 3 Cir., 1950, 183 F.2d 938, 943, in which a husband and wife filed a joint income tax return. After the time for filing the return had passed, they discovered that a family partnership they had set up was going to be recognized for tax purposes and they then attempted for their tax advantage to file separate tax returns in place of the previous joint return. The Court of Appeals for this circuit refused to permit them to revoke their first election. Therefore, at least in the Third Circuit, the law would appear to be that when, in the comparable field of income tax, an election has been made, it cannot be revoked to secure tax advantages after the time for filing the tax return has passed. See also Mertens Law of Federal Income Taxation, 1948 Revision, Secs. 60.17, 60.18.

■ The option to elect a subsequent valuation date for estate tax purposes is a right which Congress has given to decedents' estates as a matter of grace. If by mistake the election is not properly made within the permitted time, hardship and equities will not be considered in determining whether an election can be per-

---

5. The current tax return form dated May, 1955, has been changed somewhat from the older form. It now presents the problem to the taxpayer thus: "An election to have the gross estate of the decedent valued as of the alternate date or dates is made by entering a check mark in the box set forth below.

"☐ The executor elects to have the gross estate * * * valued * * * as of a date or dates subsequent to the decedent's death * * *"

6. Since the statute requires that an election to be effective must be made on the return, this reasoning as to resolving an ambiguity on a return probably would not apply to the converse of the situation in the present case, namely, an attempt by oral testimony to show that the optional valuation was elected even though the return did not clearly show it.

mitted after the time has expired. See Riley Investment Co. v. Commissioner, 1940, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. 36; Kehoe-Berge Coal Co. v. Commissioner, 3 Cir., 1941, 117 F.2d 439. The Riley and Kehoe-Berge cases involved income tax rather than estate tax. The present case differs from them also in that here the taxpayer instead of trying because of a mistake to enforce its right to make a late election, is trying beyond the permitted time to revoke an election which it made within that time because it was mistaken about the results of the election. The statute itself does not provide as clearly as it might that an election to use the optional valuation cannot be revoked after the time for making the election has passed, but it indicates that this is what is intended, by saying that if the election has been made "the value of the gross estate *shall* be determined by valuing *all* the property \* \* \* as of the date one year after the decedent's death." (Emphasis supplied.) The Regulations properly and appropriately state, "In no case may the election be \* \* \* changed after the expiration of the time for the filing of the return." In view of the clear language of the regulation, it seems to me that as far as the equities are concerned, the taxpayer must be held to the same liability for having exercised an election by mistake as he would be held to if he were attempting to make a late election after he had failed by mistake to make it within the proper time.[7] The language of the Supreme Court in Riley Investment Co. v. Commissioner, supra, 311 U.S. at page 59, 61 S.Ct. at page 97, followed by the Third Circuit in the Kehoe-Berge case, supra, is applicable to this case: "Petitioner urges that this result will produce a hardship here. It stresses the fact that it had no actual knowledge of the new opportunity afforded it \* \* \* and that equitable considerations should therefore govern. That may be the basis for an appeal to Congress in amelioration of the strictness of that section. But it is no ground

for relief by the courts from the rigors of the statutory choice which Congress has provided."

 While the purpose of the law permitting an optional valuation was to benefit taxpayers and not to trap the unwary into paying higher estate taxes, it is my opinion that in the present case the estate must be held to the election which it has made.

Judgment will be entered in favor of the defendant. This opinion will constitute the findings of fact and conclusions of law in the case.

---

7. It is not for the courts to question or confirm the wisdom of a proper regulation, but it would appear to be wise to fix a time beyond which an election cannot be changed.